is number 212910 and it's Hacker v. Dart and Mr. Morrissey, are you there? Good morning. Good morning. May it please the court. My name is Patrick Morrissey and I am one of the attorneys for the plaintiff appellant Gerald Hacker. In 2017, the plaintiff was detained at the Cook County Jail and he was not provided an accommodation or significant hearing loss to hear and communicate with others. This caused him to have significant hardship communicating with people both inside the Cook County Jail. The jail would not provide him a hearing device so he could hear and communicate with people, with staff at the Cook County Jail. In addition, for the plaintiff to communicate with others outside the jail, there was this antiquated process where the plaintiff would have to make a written request to communicate with somebody that had to be approved by the superintendent or the designee. After this approval, the jail may provide a TTY device for Mr. Hacker to use at their convenience. The district court accepted the defendant's argument that the plaintiff did not present evidence of a physical injury and therefore he had no claim for compensatory damages under the Americans with Disabilities Act. Mr. Morrissey, I'd like to ask you this because I am sympathetic to Mr. Hacker's claim that he should have been provided with an assisted listening device for his use in prison. But I'm not sure, and I need your help, that the legal path holds up. Would your client have had more success with a claim for injunctive relief under the ADA and Rehab Act? Your Honor, he did have some success on his claim for injunctive relief under the Americans with Disabilities Act. After this case was filed, the plaintiff moved for a TRO, seeking the sheriff to provide this device to the plaintiff when he communicated with counsel. You see, Your Honor, in the fall of 2017, the sheriff would not even provide this device for the plaintiff to communicate with criminal counsel at the Cook County Jail. After the TRO was granted by the district court, a few weeks later, the district court granted a preliminary injunction. And there was a procedure, Your Honor, for Mr. Hacker to be provided this device only for consultation with counsel. So Your Honor, in addition to injunctive relief, Mr. Hacker is seeking damages for the violation for he alleges they intentionally discriminated, Your Honor, against him in violation of his rights under the Americans with Disabilities Act. The district court, Your Honor, erred because it found that the Prison Litigation Reform Act's limitation on recovery precluded him from his day from a trial. Wasn't that the point of the provision in 1997 EE? It is, Your Honor, for mental and emotional injuries. And what else do we have here? My question, in essence, goes to whether our cases that allow for nominal and punitive damages and for damages for, let's say, dignitary harm or violations of constitutional rights are in substance, mental, and emotional injuries. Your Honor, he can't recover punitive damages because he's suing a government entity. He can, reviewing the court's guidance in Cassidy versus the Indiana Department of Corrections, the court reviewed a judgment. Isn't he suing Officer Sandoval? Excuse me, Your Honor? Isn't he suing the officer who threw him against the wall? He is also, Your Honor. Yeah. And that's a claim, a separate issue in this case, about the remedies that were available for Mr. Hacker. We'll talk about the grievance processes in some depth, but in terms of the damages available. In terms of the damages available, I believe the court in Cassidy versus the Indiana Department of Corrections discussed this in detail. And the court discussed the blind prisoner's relief for damages under the Americans with Disabilities Act barred him from recovering mental and emotional injuries because he— Can't we distinguish this situation from the one in Cassidy, which allowed damages for loss of an early discharge? In other words, days in prison, when one shouldn't be in prison, can be measured in a way that emotional injury cannot. And doesn't that make the Cassidy loss different from the other less calculable loss of employment injuries? Your Honor, I appreciate these are hard damages. It's hard to conceptualize the monetary loss that a person may experience like Mr. Hacker being incarcerated and being denied these programs that he alleges he's entitled to receive under federal law. Cassidy allows for loss of access to programs and services and activities guaranteed by federal law. That's one type of harm that the court in Cassidy said is appropriate. And here, it may be easier, Your Honor, to look at the program or activity of using the phone to communicate with relatives. This was a program that Mr. Hacker— How is that not emotional harm? Your Honor, it's distinct because it's the activity of engaging in the communication with people on the outside. It's hard to understand, Your Honor. I think our case law is hard to understand in the lines that it draws here, frankly. Your Honor— Maybe you can do it this way to help us. In what way do you think damages for loss of enjoyment and inconvenience can be distinguished from damages for mental and emotional loss? Well, the jury instructions, Your Honor, could explain that he would not be entitled to mental or emotional damages. And it could provide that he can recover for the inability to participate in programs or activities such as using the telephone or the harm that he experienced by not having full access to communicate with counsel. How does it translate to physical injury? Well, Your Honor, the grievance that he filed in May of 2017 complained about a barrier hearing. The sheriff's office responded, and the grievance process allows somebody to complain about a problem, incident, or event. He complained about this ongoing barrier communicating. The sheriff collected the grievance. They are the only entity that has a grievance system at the Cook County Jail. And in response to that grievance, the sheriff's office provided it to the ADA compliance officer. Yeah, so we're starting to drift into exhaustion a little bit here. Yes. Okay, so you were talking about the, what is it, the TDY or TTY device. You may have something on one aspect of your assisted listening device claim. And the reason I want to ask you this, it's going to bleed into exhaustion, is to tell me whether you think you exhausted it or not. And that is, it's not that difficult for me to see a physical injury connection on the assisted listening device claim if you read the medical pass complaint broad enough to be that he missed the prescription medication because he lacked an assisted listening device. That's a physical injury. He was suffering from an infection. He didn't get the medication. That's not very difficult for me to see as a physical injury. But your assisted listening device claim is much broader than that. It's not limited to the medical pass at all. And my question is, do you even think you linked in the district court the medical pass complaint to the ALD complaint? I believe so, Your Honor. Where? And here's why. Where? The grievance response by the sheriff's office. The grievance response tells Mr. Hacker that we are not required to give you this personal use device. And at the conclusion of the response, it says, please advise us of any other accommodation. The grievance addresses a problem he has. OK. In the district court, when this came to summary judgment, did you argue the ALD exhaustion issue in terms of, yes, there's a physical injury as at least as to the missing of the prescription medication? It was argued, but more in the context, Your Honor, of liability on behalf of the county. It was discussed in the briefs about how the harm manifested because the staff at the jail in the record, Your Honor, is the staff at the jail. The correctional staff is the person who announces medication pass at the Cook County jail. The superintendent, after the case was filed, issued a memorandum to staff saying, Mr. Hacker is not on purposefully missing medication. He can't hear. I guess what I'm trying to figure, count one of your complaint is a request for an accommodation, right, under the ADA. And what I could not see is whether in the district court briefing, when we're talking about the accommodation of the assisted listening device, whether you argued that in any way in terms of missing the prescription. That's what I don't see. And so all I'm trying to say with this, I'm not trying to confuse any, I'm trying to say, I think you may have something on the physical injury part, but it's not clear to me you presented it to the district court. Yes, Your Honor, and my response to the court is it was addressed in a large segment, the July of 2017, when he was diagnosed by the dentist until the November of 2017, when he actually presented to the dentist for the ultimate treatment. That was addressed. The issue of the pain and suffering that Mr. Hacker suffered during that period was addressed. There was no section, Your Honor, in the response brief to summary judgment that specifically laid out that point. But it was across the brief that that was one of the harms that Mr. Hacker claims to have suffered because of this, the ongoing problem about not being able to hear and communicate while he was detained at the jail. I'm inclined to agree with much of what Judge Scudder has said, and particularly with respect to the effects of being denied the antibiotics. Was he also unable to access pain medication he was supposed to get? Yes, Your Honor, because when he went to the dentist in July of 2017, the dentist prescribed him pain medication and amoxicillin to address the antibiotic. Yeah, we're aware of that. Thank you. And so, could we turn to one of the exhaustion issues, and in particular, what I'm going to call the shove grievance, the March 28, 2017 grievance. Do we know when the, is it the Office of Professional Responsibility or OPE, Office of Professional Investigations? Right. Do we know when they finished with the case? Your Honor, there was briefing in the case that they had a decision after this case was filed in July, I believe, of 2017 is when they made their finding. There's no evidence in the case, and the district court didn't review any evidence from the defendants when, whether this was provided to Mr. Hacker for notice. And for the grievance procedure to be accountable to inmates, it has to be clear. There has to be clear instructions about the requirements, and the district court understood that there was confusion about the timing of when a detainee must appeal, and the district court nonetheless held, because there was no ultimate appeal to the first form, that the claim was untimely. Is there any time limit? I'll ask the defense as well. Any time limit as to when that office needs to finish an investigation? Your Honor, from the OPR, I don't believe there's any time period that is in the record. And if he was notified, if Mr. Hacker was notified about that OPR decision after he had filed this lawsuit, then any further appeal would have been too late to exhaust in connection with this lawsuit, right? Well, I don't believe necessarily, Your Honor, because dismissal for failure to exhaust availed administrative remedies is normally without prejudice, so that if there was adequate notice for Mr. Hacker, and there was clear guidelines from the sheriff's office about what to do in that event, and the time period when he must respond, because there was never any time period provided notice to Mr. Hacker, the time period when he must respond to that matter, and I believe dismissal of that claim would have been without prejudice. Your Honor, I have like to, if the court has any questions for me. Don't worry, I'm going to give you rebuttal time. There are a lot of moving parts here. Yeah, and don't worry about it. Okay. All right. Ms. Jantz. May it please the court, counsel. I'm here today on behalf of Sheriff Dart and Officer Sandoval. I need to ask you something immediately. Forgive me. Please. Because your brief states that the sheriff's response to Hacker's grievance against Sandoval was also, the word also, being reviewed by the Office of Professional Review, the OPR. Who else was reviewing the grievance, and why did he never get a response from that other person or body? Now, I'm trying to remember. I think there's a superintendent that, actually, I've got the grievance. And this was in your red brief at page 11. Well, at your brief, page 11. I'm sorry, page 12, page 12. I said 11. 12. Because what I'm wondering, of course, is what should we make of Wortham versus Boyle, that case of ours, and the idea that a plaintiff has to wait, or at least may wait, until the internal affairs investigation is complete. So that I can see a catch-22 situation here, where had Hacker filed an administrative appeal, the prison may have said to him, you have to wait until the OPR has finished its investigation. And that feels like a moving target to me. Now, I realize that a number of the district courts have interpreted Wortham as giving a detainee or an inmate the option to appeal right away, or appeal once the OPR investigation has concluded. I don't read Wortham quite that broadly. I think it's clear that they say that the existence of the OPR investigation does not relieve the grieving detainee of the exhaustion requirement. It seems as if you're the position, at any rate, in the brief, is that if a prisoner gets a response to his grievance, and it says, we received your grievance. We're passing it on to the OPR for evaluation. The prisoner has to appeal right away after receiving that response. But what is it exactly that the prisoner would be appealing? The decision to refer it for investigation to OPR without any other action. In this case, Mr. Hacker's grievance suggested some other types of remedies that he was looking for. The ability to make a record of his injuries. He wanted to be able to personally, directly press charges against the officer. The prisoner's response was that the allegations you have raised have been referred to OPR for investigation. That's the response. That's the action that they have taken in response to his grievance. OK, can we go back to my original question? Because I've sort of piled it on, I guess.  I'll get specific language straight off the grievance. And this is, I think I'd probably, and I, you know, semantics. But the divisional superintendent and Office of Professional Review, OPR, aren't reviewing the grievance. They're reviewing the allegations that have been forwarded to them. The grievance was reviewed and responded to. And the response was, we're going to ask these other divisions to take a look at this. At that point, would there be any point in asking for further review of the grievance? Because the response is going to be, of course, we referred it on to OPR and we're waiting for them, right? If he's unhappy with the decision to refer, then he should. So that seems like a total waste of time. Right. And one of the problems that I hope that you'll address in the course of addressing Judge Rovner's question as well is, what do we make of the clarity and accessibility of these procedures if the district judges in the Northern District of Illinois cannot figure out what a prisoner in this situation is supposed to do? Well, and it's not clear that all of these decisions are dealing with the same grievance policy. So there are different entities involved in the different cases. So they're kind of addressing this general idea of internal affairs or professional review and at different times in history. But I think that if you look at the grievance policy itself in the inmate handbook, it's pretty straightforward. Then why are so many judges coming to different conclusions about it? Right. That's a good question. It suggests to me that, well, the inference is pretty obvious. Because it's a complex labyrinth, okay, that seems to have been erected for those who are least capable of dealing with situations such as the one alleged here seems to me at this point. So it's not clear what evidence in those other cases was considered to find that, oh, this is unclear or not clear. In this case, the evidence, we have the inmate grievance policy. We have the inmate grievance form. Both of which are straightforward that if you want to exhaust your administrative remedies, you need to file an appeal within 15 days after receiving the response. They say that clearly. But in the context of a response that says, in essence, we're not doing anything with this until we hear from OPR. And OPR has apparently no time limit? Is that right? That's my understanding, yes. Okay, this sounds not quite Kafkaesque, but close, okay. So I think it's worse. Okay. Okay, I would add a worse aspect. So it includes an appeal form, or at least Mr. Hacker received an appeal form when it told him OPR is investigating. I think, I don't know what the point of the appeal form is. I need to wait for the outcome of the OPR investigation. Well, then when the OPR investigation closed and he got notice of that, it didn't include an appeal form. So you would think your point in your red brief is that he's failed to exhaust because at no point did he appeal. Correct. He didn't appeal along the way, and he didn't appeal at the end that way. Correct. But isn't it fair to say, I mean, Mr. Hacker is trapped. I disagree. I disagree wholeheartedly. I, Judge Hamilton's talking about Northern District of Illinois judges. I'm on this court. I'll say, I can't figure it out. You're not alone. I'll see if I can help. So the OPR investigation process, and I think this court recognized that in Bowers and foreshadowed that in Pavey. That's not part of the grievance process. That's a separate investigation, part of the prison's discipline. Mr. Hacker has no interest other than sort of that. Go back, Ms. Jansen, to what you said earlier. About two minutes ago, you said if he's not happy with the referral, he should have appealed. I don't know what that means. What is he supposed to do? Say, I appeal the referral because I thought the referral was mandated given the nature of the allegation. So when he says, it just seems like you're asking him to do something entirely futile. I'm not happy with the referral. That's my appeal. And aren't they going to say the referral is mandatory given what you've alleged? Well, he can appeal that I'm not happy with the referral being the only remedy being offered. What? What does that mean? So if he's dissatisfied that all that they're doing is sending it off to OPR, if he thinks that he should have gotten some additional remedy other than an investigation, he can appeal that. And where do you think he's going to get with that? I would really like to know. I don't know because he didn't attempt it. I see. I don't know how this is all going to come out, but it seems like a productive exercise this afternoon might be to sit down and retool all this. And rewrite it in a way that can be comprehended by inmates on the receiving end of this because you have panels of judges that can't figure this stuff out. Could I ask you about the medical aspects of the case? Please. And in particular, the relationship between the sheriff, the county, and CERMAC Healthcare. The detainee in the Cook County Jail, I think was said, has access to just one grievance procedure, right? For anybody who is interacting with him, anybody who has responsibility for him. So, first of all, do you agree that the sheriff has the constitutional responsibility for the healthcare of inmates in the Cook County Jail? Sure. Okay. And maybe I misunderstood your brief, but you seem to be saying that notice to the sheriff is not notice to the county, is not notice to CERMAC, and vice versa. Did I misunderstand that? Or is notice to one of them enough for everybody? What I... And I apologize that that wasn't clear. What I was trying to explain in terms of notice is that the May 13th grievance, which is the one that he exhausted, didn't provide notice of these medical claims that are the subject of the July 22nd medical access grievance. Oh, excuse me. In May, as I recall, of 2017, HACR made the following complaint. Since, let me think, since my arrival here at Cook County, I've not been provided with an available hearing device or an available hearing device to accommodate my disability in violation of the ADA. Now, wouldn't that be considered a claim that he needs a hearing device to do anything that needs to be done in prison? Why would this have been notice to whoever had to provide his medication that he wouldn't be able to hear with a medication call? That's just one question. Well, he's not raising a claim that... So the response that the prison gave him to that was that you don't get round-the-clock access to an assistive listening device. But if you need other accommodations for your disability, such as accommodations to access medical care, to communicate with your doctors, let us know. What he was asking for was round-the-clock access to an assistive listening device. Because how does he know precisely when he's going to need the medication, for instance? I mean, aren't you putting an awful lot of responsibility on the prisoner? I mean, you say round-the-clock. I mean, do you understand why? So if he goes to the dentist or the doctor and notices that, hey, this is, you know, I'm not able to communicate effectively. And of course, an assistive listening device is not the only possible accommodation they can offer. They can do things in writing, which they did. They can speak loudly, which they did. If he's saying that he needs it for specific purposes, the sheriff is entitled to notice that he's not just looking to have one round-the-clock for convenience. Convenience? To survive? Well, I can't hear her. In any case, yeah, so he also, in his arguments before the district court, never suggested that he was arguing that the sheriff was responsible for his inability to access medication at the medication pass calls. I know he says that he identified a— That goes back to my question. The sheriff is ultimately responsible for the health care that's being provided, right, or not provided. But had he raised that argument in the district court, the district court might have considered that and said, yeah, you've got a claim against the sheriff on this. Had he raised it in the district court, we might have presented an argument like, oh, wait. But he didn't. His complaint just kind of alleges an amorphous ADA claim. It's not clear that he's alleging this separate medical access claim, separate from the assistive listening device claim. We responded based on the May 13th— How are those that separate? I mean, the consequence of the failure to accommodate him is that he's not getting the antibiotics and the pain medication that he's supposed to get. That's not the consequence of not providing an assistive listening device. It's a failure to accommodate him. Correct. But his May 13th grievance was limited to access to an assistive listening device. He didn't, in that grievance, seek any other accommodation. So he could have been— The response was, we will accommodate you, right? Yeah. You're just not going to do it that way. Right. But then they don't do it. Exactly.  for every specific failure to accommodate? He simply needs to request what accommodation he needs. If he was specific in the May 13th grievance that he wanted an assistive listening device around the clock, we said we don't do that. If there's some other accommodation that you need because of your hearing impairment, let us know. And I think the record's pretty clear. His caseworker bent over backwards trying to help him along the way with all sorts of requests for accommodation. I see my time has expired. I just requested this court affirming the district court. Ms. Jansen, thank you. Thank you. All right. Come on up, Mr. Morrissey. Mr. Morrissey gets five minutes, which is what you requested. Thank you, Your Honor. If you need it, of course. The source of this accommodation, the hearing device, comes from the sheriff. And that was explained in their general orders that this device is available 24-7 on an as-needed basis. And there's no dispute in this case that the sheriff knew that Mr. Hacker required some accommodation to hear. And during this incarceration, other than the relief provided by the district court for the accommodation for conferrals with counsel, the sheriff did take an action to this device was necessary for him to hear and communicate. So throughout this litigation, Your Honor, it was known to the sheriff that each time Mr. Hacker had a need to communicate, to be able to hear, he needed this accommodation. Is there any questions from the court? I have one. Can we go back to that March 28th shoving incident real quick? Yes, Your Honor. And set aside the whole morass with the OPR that we were talking about. What's your response to the sheriff's contention that notwithstanding the confusion, he still, Mr. Hacker, at some point had to appeal? At some point along the way. And that's the failure to exhaust. That at no point did he ever appeal. My response to the court is there has to be some guideline, either in the grievance form or in the handbook, the only two areas where inmates are told of the procedures. And there has to be an explanation to him that upon receipt of this OPR investigation and for the OPR investigation to be completed, it has to go through the command channel review. And when I told the court that the response came in the summer of 2017, I'm not— There comes a point in time, though, where he learns that OPR has closed its inquiry, correct? That's correct. It came through counsel because by that time, and there was notice that the OPR investigation was complete. Yes, Your Honor. And then there has to be some clear instruction about giving the time frame for him and the avenue that he needs to follow to appeal that decision. And the— You say it came to counsel. Did the institution itself ever inform him that the OPR investigation closed? I don't think so directly.  And I don't believe there's any procedure for OPR to provide notice to the inmate that the— That's really odd. They say the investigation is ongoing. It's pending. That's kind of a standby message, I think, fairly construed. Standby. OPR is looking at it. But then it closes and they never tell him it closes? I'm fairly certain, Your Honor, that that is— There's no requirement for— Did counsel learn about it? Well, counsel learned about it, Your Honor, because it was provided in discovery. The— The command channel, there— It's in the discovery record? The piece of paper or whatever we're talking about? It should be, Your Honor. I can supplement with the court— Oh, we can look— I mean, we can look at— That seems strange to me, but okay. But there's a— There's also this issue about this divisional superintendent who is also completing some form of investigation, and there's no evidence in the record that Mr. Hacker was ever told by this person the results of the investigation.  The record, the short appendix, Your Honor, on page 40 has the— It's called an emergency grievance action response form that the— that was provided in discovery in response to this grievance, and there's no documentation that this type of information is ever provided to the inmate, and that presents a problem. Is that document you're referring to at appendix 40, is that what you think is the closure of the OPR? No, Your Honor. This document is— I don't either. This document, Your Honor, is a document, I believe, was addressed on behalf of the superintendent concerning this grievance, and it says it's Commander Thomas. Mr. Hacker was told that OPR and the superintendent were going to complete an investigation. There's some internal documentation that the superintendent did something, but this is not something that was provided to Mr. Hacker, nor do defendants present any evidence that this document was actually, in fact, given to him to trigger any obligation to appeal. If there are no further questions, I ask that the Court reverse and remand the decision back to the District Court. I appreciate the Court's time. Thank you. All right, and we appreciate both you and Ms. Jansen, and the case will be taken under advisement.